IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0884

_____

**FILED**

**June 5, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: K.L.

_____

Appeal from the Circuit Court of Wetzel County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 12-JA-6

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: April 9, 2014
Filed: June 5, 2014

Patricia A. Kurelac, Esq.
Kurelac Law Offices, PLLC
Moundsville, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Katherine M. Bond, Esq.
Assistant Attorney General
White Hall, West Virginia
Counsel for the West Virginia
Department of Health and Human
Resources

Roger R. Weese, Esq.
Weese Legal Services
New Martinsville, West Virginia
Guardian Ad Litem

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record reviewed in its entirety." Syl. pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      "[This Court] may, sua sponte, in the interest of justice, notice plain error." Syl. pt. 1, in part, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

3.      "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

i

4.	"[T]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child. It remains upon the State Department of [Health and Human Resources] throughout the proceedings." Syl. pt. 2, in part, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981).

5.	"The presence of one of the factors outlined in *W. Va. Code*, 49-6-5b(a)(3) [1998] merely lowers the threshold of evidence necessary for the termination of parental rights. *W. Va. Code*, 49-6-5b(a)(3) [1998] does not mandate that a circuit court terminate parental rights merely upon the filing of a petition filed pursuant to the statute, and the Department of Health and Human Resources continues to bear the burden of proving that the subject child is abused or neglected pursuant to *W. Va. Code*, 49-6-2 [1996]." Syl. pt. 5, *In re George Glen B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000).

6.	"To be 'plain,' the error must be 'clear' or 'obvious.'" Syl. pt. 8, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

7.	"Assuming that an error is 'plain,' the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the [petitioner]. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court . . . ." Syl. pt. 9, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

8.      "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions." Syl. pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

9.      "The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

10.      "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. pt. 5, *State ex rel. Grob v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975).

Per Curiam:

Petitioner Ashley L. appeals the August 21, 2013, order of the Circuit Court of Wetzel County that terminated her parental rights to her daughter, K.L.[1] Because this Court finds plain error in the proceedings below, we reverse the circuit court's order and remand for proceedings as directed in this opinion.

## I.  FACTS

On or about July 17, 2012, Respondent Department of Health and Human Resources (hereinafter "DHHR" or "the Department") filed a petition to institute abuse and neglect proceedings against Petitioner Ashley L. regarding her child K.L. The petition was filed pursuant to W. Va. Code § 49-6-5b(a)(3) (2006), which requires the DHHR to file such a petition when the parental rights of the parent to a sibling of the subject child have been terminated involuntarily.[2] The petition alleged, *inter alia*, that on May 6, 2008, in Marion County, the petitioner's parental rights were terminated as to child C.W., a sibling of K.L.[3]

---

[1] As is customary in cases involving children and sensitive facts, this Court uses initials to identify the parties.

[2] West Virginia Code § 49-6-5b(a)(3) provides in pertinent part: "(a) Except as provided in subsection (b) of this section, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights . . . (3) [if] the parental rights of the parent to a sibling have been terminated involuntarily."

[3] The petition also indicated that the petitioner voluntarily relinquished her parental rights to three other children in 2010.

The DHHR's petition against the petitioner was based solely on the prior involuntary termination. The DHHR requested in the petition that K.L. be placed in the legal custody of the Department and that the physical custody remain with the petitioner pending further proceedings. After a subsequent hearing, the circuit court found in its adjudication order that the petitioner admitted that there was a prior involuntary termination of her parental rights, and therefore the petition was substantiated. The circuit court ordered that K.L. remain in the legal custody of the Department and the physical custody of the petitioner.

In February 2013, the petitioner was the victim of domestic violence when Curtis L., her husband and K.L.'s father, beat the petitioner. Curtis L. was arrested, and the petitioner shortly thereafter filed for divorce. As a result of this domestic violence incident, K.L. was removed from the petitioner's physical custody.

The circuit court held the disposition hearing on the abuse and neglect petition against the petitioner on August 2, 2013. At the beginning of the hearing, the circuit court noted that "the unique posture of [the case] is that the burden of proof is upon the parents to prove a substantial change in circumstances such that their parental rights should not be terminated." At the close of the hearing, the circuit court found as follows:

> I believe it's West Virginia 49-6 and 5; burden is upon,
> not the Department, being represented by the Prosecuting

2

Attorney, but upon the parents in this instance, Curtis and Ashley [L.] to prove substantial change in circumstances.

I would suppose and would believe that the burden of proof would be by clear and convincing evidence insofar as that's what the burden of proof is on the Department to prove that, at an adjudication, abuse and/or neglect, but even if I lowered the standard to preponderance of the evidence, the Court is not satisfied that Curtis and Ashley [L.] have, with all due respect, met their burden of proof to satisfy the Court that they have substantially changed their circumstances as since having previously been involuntarily terminated from the parental rights of prior children.

With that, the burden does not shift to the Department then to put on a case to prove otherwise.[4]

(Footnote added). Accordingly, by order dated August 21, 2013, the circuit court terminated the petitioner's parental rights to K.L. after finding that the petitioner failed to meet her burden of showing a change in her circumstances since the termination of her parental rights to C.W.[5] The petitioner now appeals this order.

## II. STANDARD OF REVIEW

In this case, we are asked to review an order that terminated the petitioner's parental rights. Our applicable standard of review is as follows:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of

---

[4] This burden of proof was reiterated in the circuit court's disposition order which stated: "Whereupon, the Court further found that even if he lowered [the burden of proof] to just preponderance that the Court would not be satisfied that a change in circumstances had occurred since the involuntary relinquishment of the other children."

[5] The circuit court's order also terminated the parental rights of Curtis L., K.L.'s father, to K.L.; however, he is not a party to this appeal.

3

law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record reviewed in its entirety.

Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Our decision in this case hinges on an issue of law which we review *de novo*.

## III.  DISCUSSION

The petitioner's sole assignment of error is that the circuit court erred in terminating her parental rights to K.L. because the evidence did not meet the standard required for termination of parental rights under our law. The DHHR and the guardian ad litem posit that the petitioner's parental rights were properly terminated.  This Court finds, however, that the parties' arguments are not dispositive of our decision in this case. Instead, we find that the circuit court committed reversible error below by shifting the burden to the petitioner to show a change in her circumstances since the previous involuntary termination of her parental rights. Even though the petitioner did not raise this issue in her appeal, this Court *sua sponte* notices plain error in the circuit court's burden shifting.[6]

---

[6] Although the practice of noticing plain error *sua sponte* is usually applied in criminal cases, it is not exclusive to such cases. Recently, in *Cartwright v. McComas*, 223

4

In syllabus point 1, in part, of *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998), we held that "[this Court] may, sua sponte, in the interest of justice, notice plain error." Our plain error analysis involves a four-step test. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). This Court finds that the circuit court's burden-shifting below constitutes error, in that it deviated from a rule of law of this Court. *See* Syl. pt. 8, in part, *Id.* (holding that "[a] deviation from a rule of law is error unless there is a waiver" which is "a knowing and intentional relinquishment or abandonment of a known right"). The rule of law from which the circuit court deviated is found in syllabus point 2, in part, of *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981), which holds that "the burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child. It remains upon the State Department of [Health and Human Resources] throughout the proceedings."

More recently and more specific to the instant case, this Court held in syllabus point 5 of *In re George Glen B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000):

> The presence of one of the factors outlined in *W. Va. Code*, 49-6-5b(a)(3) [1998] merely lowers the threshold of

---

W. Va. 161, 672 S.E.2d 297 (2008), this Court applied the doctrine in an appeal involving a claim of medical malpractice. In that case, we cited, *inter alia*, 2A Fed. Proc., L.Ed. § 3:860 (acknowledging the power of federal courts to apply the plain error doctrine in appeals of civil as well as criminal cases).

5

evidence necessary for the termination of parental rights. *W. Va. Code*, 49-6-5b(a)(3) [1998] does not mandate that a circuit court terminate parental rights merely upon the filing of a petition filed pursuant to the statute, and the Department of Health and Human Resources continues to bear the burden of proving that the subject child is abused or neglected pursuant to *W. Va. Code*, 49-6-2 [1996].

This Court made clear in *In re George Glen B., Jr.*, that "while the Department does have a mandatory duty to file a petition, a circuit court may not terminate parental rights without additional evidence of abuse or neglect of the current child." *Id.*, at 350, 532 S.E.2d at 68. Therefore, under our law, it is clear that the DHHR retains the burden of showing by clear and convincing evidence, even in a case in which there has been a prior termination of parental rights, that the subject child is neglected or abused.[7]

---

[7] With regard to neglect and abuse cases involving prior termination of parental rights, this Court has held:

> Where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the four factors outlined in West Virginia Code § 49-6-5b(a) (1998) is present.

Syl. pt. 2, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999). In addition, we have held:

> When an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental

In addition, this Court finds that the error is plain. "To be 'plain,' the error must be 'clear' or 'obvious.'" Syl. pt. 8, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. The circuit court stated clearly on the record that under the facts of this case the burden shifted to the petitioner to show a substantial change in circumstances since the previous termination of her parental rights. Thus, the circuit court's error is obvious to this Court.

Finally, "[a]ssuming that an error is 'plain,' the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the [petitioner]. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court . . . . " Syl. pt. 9, in part, *Id.* There can be no doubt that the circuit court's burden shifting prejudiced the substantial rights of the petitioner. This Court has recognized that

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

---

> rights to a sibling pursuant to West Virginia Code § 49-6-5b(a)(3) (1998), prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

Syl. pt. 4, *In re George Glen B., Jr.*, *supra.*

7

Syl. pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). As a result, "[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. pt. 6, *Id.* Significantly, this burden of proof is a constitutional imperative. In *Santosky v. Kramer*, 455 U.S. 745, 747 (1982), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment of the Federal Constitution demands more than a showing of "a fair preponderance of the evidence" to extinguish the parent-child relationship." Instead, opined the Court, "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations [of abuse and/or neglect] by at least clear and convincing evidence." 455 U.S. at 747–48. Thus, we find that the circuit court below violated the petitioner's constitutional due process rights when it shifted the burden to her to show a change in circumstances since the previous termination of the petitioner's parental rights to another child.

Further, this Court has held that "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. pt. 5, *State ex rel. Grob v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975). In the instant case, the constitutional error in burden shifting was not harmless beyond a reasonable doubt. Significantly, the circuit court did not require the DHHR to adduce evidence or provide testimony at the dispositional hearing that the petitioner abused or neglected K.L. Moreover, the circuit court's termination of the petitioner's

8

parental rights to K.L. clearly was based on the fact that the petitioner failed to meet *her* burden of showing a change in circumstances. Therefore, this Court finds that the circuit court violated the petitioner's due process rights when it shifted the burden of proof to the petitioner, and that this violation clearly prejudiced the petitioner.

Finally, this Court notes the legally unsound arguments of the DHHR and the guardian ad litem before this Court to the effect that despite any procedural irregularities in the proceedings below, the dispositive factor in this case is the best interests of K.L. First, terminating the parental rights of the petitioner to K.L. based on shifting the burden of proof to her to show that she did not neglect and or abuse K.L. is not a mere procedural irregularity, but rather a constitutional due process error. Second, the best interests of the child do not become paramount until the child's parents are found to be unfit. Until that time, the best interests of the parents and children are presumed to be the same. As the Supreme Court said in *Santosky*, it is not until "[a]fter the State has established parental unfitness . . . that the interests of the child and the natural parents do diverge. . . . [U]ntil the State proves parental unfitness, the child and his [or her] parents share a vital interest in preventing erroneous termination of their natural relationship." 455 U.S. at 760 (footnote omitted). Indeed, if a parent's unfitness did not have to be shown prior to considering a child's best interests, the State could simply dispense with due process procedures and simply remove children from fit parents who may be poor or uneducated and place them with fit parents who may be more affluent and or better educated based on the State's belief that it knows what is best for a child.

9

In sum, this Court finds that the circuit court committed reversible error in shifting the burden to the petitioner in the instant abuse and neglect case. As noted above, the burden of proof never shifts from the DHHR to the parent throughout a case involving allegations of child abuse and neglect. Upon remand of this case, if the DHHR chooses to go forward in alleging abuse and neglect against the petitioner, we direct the circuit court to follow the points of law set forth by this Court in *In re George Glen B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000). Specifically, the burden remains with the DHHR to show by clear and convincing evidence that the petitioner committed abuse and/or neglect of K.L. in addition to showing the previous termination of the petitioner's parental rights to a sibling of K.L. As noted above, the DHHR's petition against the petitioner was based solely on the prior involuntary termination, without further allegations. There must be specific allegations and evidence of abuse or neglect of K.L., which could include demonstrating that K.L. was abused and/or neglected by showing the petitioner failed to correct the conditions that led to the prior termination of her parental rights and/or that other circumstances exist which would establish abuse and/or neglect.

Consequently, on remand, if such circumstances exist, the DHHR should file an amended abuse and neglect petition that includes any developments subsequent to the filing of the original petition that are relevant to the petitioner's fitness as a parent to K.L., including anything that occurred during the petitioner's improvement period. However, the circuit court must remain mindful that

10

> [i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.

Syl. pt. 4, *In Re B.H.*, 233 W. Va. 57, 753 S.E.2d 743 (2014).  Because the child is in placement, such petition should be filed within sixty days of this opinion. If no such petition is filed and if the child is to be returned to the mother, the lower court should develop a plan of gradual transition, pursuant to *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991),[8] calculated to minimize emotional trauma to the child.


## IV.  CONCLUSION

For the reasons set forth above, this Court reverses the August 21, 2013, order of the Circuit Court of Wetzel County that terminated Petitioner Ashley L.'s parental rights to K.L., and we remand this case to the circuit court for proceedings as directed in this opinion.

Reversed and remanded with directions.

---

[8] Syllabus point 3 of *James M.* provides as follows:

> It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives.

11