# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* E.C.

No. 19-0834 (Wayne County 19-JA-28)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother B.C., by counsel Michael A. Meadows, and Petitioner Father L.C., by counsel Raymond A. Nolan, appeal the Circuit Court of Wayne County's August 21, 2019, order terminating their parental rights to E.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, David R. Tyson, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in adjudicating them, denying them improvement periods, and terminating their parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition that alleged that petitioners' parental rights to four older children were terminated due to extensive neglect and sexual abuse in their home. Indeed, petitioners appealed those prior terminations to this Court, and we affirmed the same. *See In re R.C., T.C., E.C., and X.C.*, No. 17-0510, 2017 WL 5632157 (W.Va. Nov. 22, 2017)(memorandum decision); *In re R.C., T.C., E.C., and X.C.*, No. 17-0511, 2017 WL 5629700 (W.Va. Nov. 22, 2017)(memorandum decision).

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

At an adjudicatory hearing in July of 2019, the DHHR presented evidence that petitioners not only had their parental rights to the older children terminated due to the extensive sexual abuse in the home, but were also convicted criminally for their conduct. According to the DHHR caseworker's testimony, "both parents . . . refuse[d] to realize that they did anything wrong and maintain their innocence," despite the fact that both parents were convicted of sexual offenses.[2] The DHHR further presented evidence that both parents were required to register as sex offenders. Based on the testimony that petitioners refused to acknowledge any prior wrongdoing, the circuit court found that petitioners failed to correct the conditions of abuse and neglect that led to the prior termination of their parental rights to older children and adjudicated them in regard to E.C.

The circuit court held a dispositional hearing in August of 2019, prior to which petitioners filed motions for post-adjudicatory improvement periods. Because petitioners continued to deny any responsibility for the sexual abuse in their home, the DHHR recommended that they not be granted an improvement period. Specifically, a DHHR worker testified that "both [parents] failed to admit that there was any type of sexual abuse that occurred and adamantly denied that they [committed] any wrongdoing in the prior case." This testimony was based on the fact that petitioners "sent numerous emails, handwritten letters, and notarized documents to the Department claiming their innocence." Petitioner father testified, during which his attorney asked, "as we sit here today, you're not willing to admit that any sexual abuse occurred on behalf of your other children?" to which petitioner father replied, "I can't, because that would be—I'm not going to tell a lie. I can't just sit here and lie." Petitioner mother testified, during which her attorney asked, "you are not willing to make admissions and you deny any wrongdoing in the previous case, correct?" to which petitioner mother replied, "Right."

Based on this evidence, the circuit court found that petitioners "continued to deny any wrongdoing and, therefore, were not amenable to correcting the circumstances of neglect." Thus, the circuit court found that that there was no reasonable likelihood the conditions of abuse and neglect in the current case could be substantially corrected. The circuit court further found that termination of petitioners' parental rights was necessary for the child's welfare. As such, the

---

[2]According to petitioners, they entered guilty pleas in their criminal cases pursuant to syllabus point one of *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987), which provides as follows:

> An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.

circuit court terminated petitioners' parental rights to the child.[3] It is from the dispositional order that petitioners appeal.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

At the outset of the Court's analysis, it is important to highlight petitioners' refusal to acknowledge their past conduct, for which they were criminally convicted, and how this failure is dispositive of every assignment of error on appeal. We note that this Court has long held as follows:

> [I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given that petitioners refuse to acknowledge any of their past abuse and neglect of the children, it is clear that petitioners failed to correct the conditions that led to the prior involuntary termination of their rights to older children, were not entitled to an improvement period, and that termination of their parental rights was appropriate.

In regard to their first assignment of error, petitioners assert that "[t]he sole allegations at the adjudicatory hearing were regarding the existence of the prior case and outcome." According

---

[3]According to the parties, the permanency plan for the child is adoption by the current foster family.

to petitioners, "[t]here was no additional evidence put forth by the Department . . . regarding the current circumstances," which is insufficient to support their adjudication in the current matter. Without belaboring the specifics of petitioners' argument, we find that it does not entitle them to relief because the DHHR met the applicable burden of proof at adjudication in this matter.

West Virginia Code § 49-4-605(a)(3), in relevant part, requires that "the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: . . . [i]f . . . the parental rights of the parent to another child have been terminated involuntarily[.]" Further, we have previously held that

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code [§§ 49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code [§ 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003). Finally, petitioners are correct that

> [t]his Court made clear that "while the Department does have a mandatory duty to file a petition, *a circuit court may not terminate parental rights without additional evidence of abuse or neglect of the current child.*" [*In re George Glen B., Jr.*, 207 W.Va. 346,] 350, [532 S.E.2d 64,] 68 [(2000)]. Therefore, under our law, it is clear that the DHHR retains the burden of showing by clear and convincing evidence, even in a case in which there has been a prior termination of parental rights, that the subject child is neglected or abused.

*In re K.L.*, 233 W. Va. 547, 553, 759 S.E.2d 778, 784 (2014) (emphasis added). Here, the record contains overwhelming evidence that petitioners failed to remedy the conditions that resulted in the prior involuntary termination of parental rights to older children and that this failure constituted abuse to E.C.

As noted above, petitioners failed to acknowledge any of their conduct from the prior proceedings, despite the fact that this Court affirmed those terminations and they were convicted of criminal charges stemming from this conduct. Despite the overwhelming evidence that petitioners allowed sexual abuse to occur in their home—to say nothing of their participation in such conduct that resulted in their criminal convictions and required their registration as sex offenders—petitioners continued to deny that they engaged in any wrongdoing. At the adjudicatory hearing, the DHHR presented comprehensive evidence of the prior termination of petitioners' parental rights to the older children and their subsequent criminal convictions. The DHHR also presented evidence that both parents "still refuse to realize that they did anything

wrong and maintain their innocence." On appeal, petitioners argue that "[t]here was not any evidence put forth" that petitioners "had not corrected the prior circumstances, only that there were prior circumstances which they refused to acknowledge."[4] This is simply inaccurate and only underscores petitioners' refusal to recognize that their failure to acknowledge the conditions from the prior proceedings means that petitioners could not have—and, in fact, did not—correct the conditions.

Admittedly the evidence concerning petitioners' failure to correct the conditions of abuse and neglect and the danger that presented to E.C. was concise, but it does not render it any less overwhelming for purposes of petitioners' adjudication. As highlighted above, failure to acknowledge abuse makes it untreatable. Given that petitioners failed to acknowledge their past abuse, the evidence clearly and convincingly shows that petitioners constitute a danger to E.C., given that an "abused child" is one "whose health or welfare is being harmed or *threatened by*: . . . [s]exual abuse or sexual exploitation[.]" W. Va. Code § 49-1-201. Clearly, petitioners' refusal to correct the past issues of sexual abuse that they allowed and/or perpetrated in their home constitutes a clear threat to E.C. Given that these conditions continued unabated due to petitioner's willful refusal to acknowledge them, we find no error in the circuit court's adjudication of petitioners.

Next, petitioners argue that the circuit court erred in denying their motions for improvement periods. Having fully detailed the lengths to which petitioners have refused to acknowledge their past misconduct—despite the fact that they were adjudicated for their abuse and/or neglect in the prior proceedings, this Court affirmed the terminations of their parental rights upon those allegations, and they were convicted criminally for these acts—we find that it is unnecessary to repeat this overwhelming evidence. It is sufficient, instead, to reiterate that failure to acknowledge conditions of abuse and neglect makes an improvement period "an exercise in futility at the child's expense." *Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363 (citation omitted). As this Court has long held, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period

---

[4]Petitioners also argue that the DHHR's alleged failure to present evidence of their failure to correct the conditions of abuse and neglect "shifted the burden to petitioners . . . to show that the circumstances had been changed." While recognizing that "[t]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child," we nonetheless find that such shifting did not occur below. Syl. Pt. 4, in part, *In re K.L.*, 233 W. Va. 547, 759 S.E.2d 778 (2014) (citation omitted). As set forth above, the DHHR presented overwhelming evidence that petitioners failed to correct the conditions that led to the prior involuntary termination of their parental rights to older children and further abused E.C. by threatening the child's welfare through their refusal to acknowledge the wrongdoing.

within the applicable statutory requirements . . . .”). Accordingly, we find no error in the circuit court's denial of petitioners' motions.[5]

Finally, petitioners argue that the circuit court erred in terminating their parental rights because there was insufficient evidence to find that there was no reasonable likelihood the conditions of abuse and neglect could not be corrected in the near future or that termination was necessary for the child's welfare. We find, however, that the substantial evidence laid out above supports termination as well. According to West Virginia Code § 49-4-604(c), “‘no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help.” As set forth repeatedly above, petitioners' failure to acknowledge the conditions at issue have rendered them uncorrectable. Further, it could not be more apparent that the child's welfare required the termination of petitioners' parental rights, given that they previously permitted and/or participated in sexual abuse of children in their home. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Additionally, this Court has held that

> “[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected.” Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioners' parental rights.

---

[5]Petitioners also appear to assert that the burden for obtaining an improvement period was improperly shifted to them and that “in order to obtain an improvement period, the Department and the [c]ourt demanded that they change their story from the prior case and in doing so, violated” their constitutional due process rights. First, it is clear that West Virginia Code § 49-4-610(2)(B) places the burden squarely on a parent to establish, by clear and convincing evidence “that the [parent] is likely to fully participate” in order to obtain a post-adjudicatory improvement period. Second, as set forth above, the circuit court did not err in demanding that petitioners acknowledge the conditions from the prior proceedings in order to obtain an improvement period because, absent such acknowledgment, an improvement period would be futile and the conditions uncorrectable. Contrary to petitioners' argument, this does not represent an improper burden shifting or a violation of any due process rights and, instead, was squarely in keeping with the applicable statute and our prior holdings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 21, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison